ORIGINAL

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

REBECCA PERLMUTTER
Deputy Chief, Criminal Division

MICAH SMITH
CHRIS A. THOMAS #3514
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Emails:  Micah.Smith@usdoj.gov
         Chris.Thomas@usdoj.gov

FILED IN
THE

MAY 2 6 2021

at  9  o'clock and  4⁄⁄  min.  a  M
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 20-00024-DKW |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE: |
| KELVIN KAUWILA KAI, | ) TIME |
| aka "Kauwila," | ) JUDGE: |
| Defendant. | ) |
| | ) |
| | ) |

## **MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, KELVIN KAUWILA KAI, and his

attorney, Richard D. Gronna, Esq., have agreed upon the following:

## THE CHARGES

1.      The defendant acknowledges that he has been charged in two counts

in the Indictment with violating Title 21, United States Code, Sections 841(a)(1),

841(b)(1)(A), and 846, and Title 18, United States Code, Section 1512(c)(1).

2.      The defendant has read the charges against him contained in the

Indictment, and those charges have been fully explained to him by his attorney.

3.      The defendant fully understands the nature and elements of the crimes

with which he has been charged.

## THE AGREEMENT

4.      The defendant will enter a voluntary plea of guilty to Count 1 of the

Indictment, which charges him with conspiracy to distribute and possess with

intent to distribute 500 grams or more of a mixture and substance containing a

detectable amount of methamphetamine, in violation of Title 21, United States

Code, Section 846.   In return, the government agrees to move to dismiss Count 6

of the Indictment, charging a violation of Title 18, United States Code, Section

1512(c)(1), as to the defendant after sentencing, and the government agrees not to

file a special information pursuant to Title 21, United States Code, Section 851 in

2

this matter, which would otherwise result in enhanced sentencing based on

defendant's prior conviction on or about August 4, 2006, in the U.S. District Court

for the District of Hawaii, Crim. No. 05-00440-JMS, for possession with intent to

distribute 50 grams or more of methamphetamine.   The defendant understands and

agrees that the Court may consider the conduct underlying Count 6 of the

Indictment at sentencing.

5.      The defendant agrees that this Memorandum of Plea Agreement shall

be filed and become part of the record in this case.

6.      The defendant enters this plea because he is in fact guilty of

conspiracy to distribute and possess with intent to distribute 500 grams or more of

a mixture and substance containing a detectable amount of methamphetamine as

charged in Count 1 of the Indictment, and he agrees that this plea is voluntary and

not the result of force or threats.

## **PENALTIES**

7.      The defendant understands that the penalties for the offense to which

he is pleading guilty include:

a.      A term of imprisonment of not less than 10 years and not more

than life and a fine of up to $10,000,000, plus a term of supervised release of not

less than 5 years and up to life.

3

b.     In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

c.     **Forfeiture.**   Pursuant to 21 U.S.C. § 853, forfeiture of any (1) property constituting, or derived from, proceeds the person obtained, directly or indirectly, as the result of a violation of the provisions of 21 U.S.C. §§ 801 et seq. or 21 U.S.C. §§ 951 et seq.; and (2) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

d.     **Loss of Federal Benefits.**   At the discretion of the Court, the defendant may also be denied any or all federal benefits, as that term is defined in Title 21, United States Code, Section 862, (a) for up to five years if this is the defendant's first conviction of a federal or state offense amounting to the distribution of controlled substances, or (b) for up to ten years if this is the defendant's second conviction of a federal or state offense consisting of the

4

distribution of controlled substances.   If this is the defendant's third or more

conviction of a federal or state offense amounting to the distribution of controlled

substances, the defendant is permanently ineligible for all federal benefits, as that

term is defined in Title 21, United States Code, Section 862(d).

## FACTUAL STIPULATIONS

8.     The defendant admits the following facts and agrees that they are not

a detailed recitation, but merely an outline of what happened in relation to the

charge to which the defendant is pleading guilty:

a.     At one time, Kelvin Kauwila Kai, aka "Kauwila," the defendant

(hereinafter "Kai"), had been addicted to methamphetamine, but by 2019, he had

completed drug treatment and stopped using controlled substances.

b.     In or around the spring of 2019, however, Kai became

acquainted with co-defendant Arthur Brun.   On one occasion when both men were

hanging out together, Brun provided methamphetamine and a pipe to Kai;

thereafter, Kai began to use methamphetamine again.

c.     Brun offered to supply Kai with as much methamphetamine as

he wanted to smoke in exchange for Kai's assistance with Brun's drug trafficking

activities.   Kai agreed to do so.

d.       Throughout in or about 2019, Kai assisted Brun by, among other things, delivering methamphetamine to other co-conspirators of Brun and collecting money those other co-conspirators owed to Brun.   Kai also allowed Brun to install a safe in Kai's home where Brun could securely store both methamphetamine and money.   In addition, Kai allowed Brun to bring large amount of methamphetamine to Kai's house, where Brun would "break down" the methamphetamine into smaller amounts for resale.   In addition, Kai allowed Brun to use Kai's truck for drug trafficking purposes.

e.       As a result of the assistance he provided Brun, Kai became aware of several sources of supply from whom Brun obtained pound quantities of methamphetamine, which methamphetamine Brun would then distribute to others (including to other co-conspirators who further distributed smaller amounts of methamphetamine on Brun's behalf).

f.       Co-defendant Maluelue Umu, aka "Malu," was one of Brun's sources of supply for much of 2019, and Kai sometimes accompanied Brun to collect methamphetamine from Umu.   On one occasion, on or about October 12, 2019, Umu supplied Brun with a pound of methamphetamine, after which Brun drove home.   Brun then called Kai and told him to pick up the methamphetamine from Brun's car, which Brun had parked outside of his house.   Kai sampled the

6

methamphetamine, and later called Brun and told Brun that the methamphetamine was "killa . . . the best one so far". Brun then asked, "how much had?" Kai responded "had 13," meaning that he counted 13 ounces, or somewhat less than the 16 ounces that would constitute one pound. Brun asked Kai to weigh it all out. Kai did so, and determined that there were in fact 16 ounces, or one pound, of methamphetamine. Kai later called Brun and let him know, "I counted wrong. It's all there."

        g. On or about October 29, 2019, Brun was arrested by members of the Kauai Police Department, and briefly detained, after he fled from the scene of a traffic stop. After Brun's release from detention, Brun called Kai to inform him that Brun had thrown methamphetamine out of his vehicle window while fleeing the police. Brun asked Kai to assist in trying to recover those drugs. Kai and others looked for the methamphetamine at or near the location Brun identified, but were not able to find it. On or about October 30, 2019, Brun called Kai, during which call Kai asked Brun to provide a more precise description of where he had thrown the methamphetamine. Brun responded, "Fuck, maybe was more down because I think I was around one corner when I did um, so nobody was really following me." After this incident, Umu became less inclined to supply methamphetamine to Brun.

h.     Brun nonetheless secured other sources of supply of methamphetamine.   These suppliers included co-defendants Kaniu Huihui and Phrystal Bacio.   In addition, Brun began to obtain pound quantities of methamphetamine from Khayla Alapai (charged in Crim. No. 21-00001-DKW (D. Haw.)) and another individual.   Alapai and that other individual would fly into Princeville on Kauai through private chartered airplanes.   Kai sometimes accompanied Brun to collect methamphetamine from Alapai and the other individual.

9.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

8

a.      As of the date of this agreement, it is expected that the

defendant will enter a plea of guilty prior to the commencement of trial, will

truthfully admit his involvement in the offense and related conduct, and will not

engage in conduct that is inconsistent with such acceptance of responsibility.   If

all of these events occur, and the defendant's acceptance of responsibility

continues through the date of sentencing, a downward adjustment of 2 levels for

acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and

Application Note 3.

b.      The United States Attorney agrees that the defendant's

agreement herein to enter into a guilty plea constitutes notice of intent to plead

guilty in a timely manner, so as to permit the government to avoid preparing for

trial as to the defendant.   Accordingly, the United States Attorney anticipates

moving in the Government's Sentencing Statement for a one-level reduction in

sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is

otherwise eligible.   The defendant understands that notwithstanding its present

intentions, and still within the Agreement, the prosecution reserves the rights (1) to

argue to the contrary in the event of receipt of new information relating to those

issues, and (2) to call and examine witnesses on those issues in the event that either

9

the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.    The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12.    The parties represent that as of the date of this agreement there are no material facts in dispute.

### APPEAL/COLLATERAL REVIEW

13.    The defendant is aware that he has the right to appeal his conviction and the sentence imposed.    The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this

10

Agreement.   The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

       a.     The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

       b.     If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

       c.     The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.    In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

11

a.     The defendant agrees to fully disclose all assets in which he has

any interest or over which he exercises control, directly or indirectly, including any

assets held by a spouse, nominee, or third party.   The defendant understands that

the United States Probation Office (USPO) will conduct a presentence

investigation that will require the defendant to complete a comprehensive financial

statement.   To avoid the requirement of the defendant completing financial

statements for both the USPO and the government, the defendant agrees to

truthfully complete a financial statement provided to the defendant by the United

States Attorney's Office.   The defendant agrees to complete the disclosure

statement and provide it to the USPO within the time frame required by the United

States Probation officer assigned to the defendant's case.   The defendant

understands that the USPO will in turn provide a copy of the completed financial

statement to the United States Attorney's Office.   The defendant agrees to provide

written updates to both the USPO and the United States Attorney's Office

regarding any material changes in circumstances, which occur prior to sentencing,

within seven days of the event giving rise to the changed circumstances.   The

defendant's failure to timely and accurately complete and sign the financial

statement, and any written update thereto, may, in addition to any other penalty or

12

remedy, constitute the defendant's failure to accept responsibility under U.S.S.G §
3E1.1.

      b.     The defendant expressly authorizes the United States
Attorney's Office to obtain his credit report.   The defendant agrees to provide
waivers, consents, or releases requested by the United States Attorney's Office to
access records to verify the financial information, such releases to be valid for a
period extending 90 days after the date of sentencing.   The defendant also
authorizes the United States Attorney's Office to inspect and copy all financial
documents and information held by the USPO.

      c.     Prior to sentencing, the defendant agrees to notify the Financial
Litigation Unit of the U.S. Attorney's Office before making any transfer of an
interest in property with a value exceeding $1,000 owned directly or indirectly,
individually or jointly, by the defendant, including any interest held or owned
under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

15.     The defendant understands that the District Court in imposing
sentence will consider the provisions of the Sentencing Guidelines.   The defendant
agrees that there is no promise or guarantee of the applicability or non-applicability

of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16.    The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

17.    The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

14

b.      If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

15

e.     At a trial, the defendant would have a privilege against

self-incrimination so that he could decline to testify, and no inference of guilt

could be drawn from his refusal to testify.

f.     At a trial, the defendant would have a right to have the jury

determine beyond a reasonable doubt the quantity and weight of the controlled

substance charged in the Indictment necessary to establish the statutory mandatory

minimum penalty or an increased statutory maximum penalty.

18.     The defendant understands that by pleading guilty, he is waiving all of

the rights set forth in the preceding paragraph.   The defendant's attorney has

explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

19.     If, after signing this Agreement, the defendant decides not to plead

guilty as provided herein, or if the defendant pleads guilty but subsequently makes

a motion before the Court to withdraw his guilty plea and the Court grants that

motion, the defendant agrees that any admission of guilt that he makes by signing

this Agreement or that he makes while pleading guilty as set forth in this

Agreement may be used against him in a subsequent trial if the defendant later

proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives

any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure

16

and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

20.   The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## **COOPERATION**

21.   The defendant agrees that he will fully cooperate with the United States.

a.   The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

17

b.      The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.      The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.      The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

e.      Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

18

22.    In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.   The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

23.    Pursuant to Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence for Count 1 on the ground that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.   The defendant understands that:

a.    The decision as to whether to make such a request or motion is entirely up to the prosecution.

19

    b.    This Agreement does not require the prosecution to make such a request or motion.

    c.    This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

    d.    Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

24.    The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

25.    To become effective, this Agreement must be signed by all signatories listed below.

//


//

26.     Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

AGREED:


JUDITH A. PHILIPS
Acting United States Attorney

District of Hawaii

_____
REBECCA PERLMUTTER
Deputy Chief, Criminal Division

Dated: 5/13/21


_____
MICAH SMITH
CHRIS A. THOMAS
Assistant U.S. Attorneys

Dated: 5/13/2021


_____
KELVIN KAUWILA KAI
Defendant

Dated: 5-19-21


_____
RICHARD D. GRONNA
Attorney for Defendant

Dated: 5/19/2021


21